# 24-2392-cv

## United States Court of Appeals
*for the*
## Second Circuit

———

GO NEW YORK TOURS INC,

*Plaintiff-Appellant,*

— v. —

GRAY LINE NEW YORK TOURS, INC., TWIN AMERICA LLC,
SIGHTSEEING PASS LLC, BIG BUS TOURS GROUP LIMITED, OPEN TOP
SIGHTSEEING USA, INC., TAXI TOURS, INC., LEISURE PASS GROUP
HOLDINGS LIMITED, LEISURE PASS GROUP LIMITED, LEISURE PASS
GROUP INC., BIG BUS TOURS LIMITED,

*Defendants-Appellees.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT BRIEF FOR DEFENDANTS-APPELLEES

KERRY K. JARDINE
RICHARD SYBERT
DANIEL B. FIX
GORDON REES SCULLY MANSUKHANI, LLP
*Attorneys for Defendants-Appellees*
*Gray Line New York Tours, Inc.,*
*Twin America, LLC, and Sightseeing*
*Pass LLC*
677 King Street, Suite 450
Charleston, South Carolina 29403
(843) 278-5900

STEPHEN ROSS
PETER M. SARTORIUS
OLSHAN FROME WOLOSKY LLP
*Attorneys for Defendants-Appellees*
*Big Bus Tours Group Limited, Open*
*Top Sightseeing USA, Inc., Taxi*
*Tours, Inc., Leisure Pass Group*
*Holdings Limited, Leisure Pass*
*Group Limited, Leisure Pass Group*
*Inc. and Big Bus Tours Limited*
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

 (800) 4-APPEAL • (335044)

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Appellees Gray Line New York Tours, Inc., Twin America, LLC, Sightseeing Pass LLC, Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., Taxi Tours, Inc., Go City Holdings Limited (f/k/a Leisure Pass Group Holdings Limited), Go City Limited (f/k/a Leisure Pass Group Limited), and Go City Inc. (f/k/a Leisure Pass Group, Inc.), certify as follows:

1.　　　Defendant-Appellee Gray Line New York Tours, Inc. is a direct, wholly owned subsidiary of Defendant-Appellee Twin America, LLC.

2.　　　Defendant-Appellee Sightseeing Pass LLC is a direct, wholly owned subsidiary of Defendant-Appellee Twin America, LLC.

3.　　　Defendant-Appellee Twin America, LLC is a nongovernmental company, which has no parent corporation.

4.　　　Defendants-Appellees Gray Line New York Tours, Inc., Sightseeing Pass LLC, and Twin America, LLC, each certifies that it is a nongovernmental company and that no publicly held corporation owns 10% or more of its stock.

5.　　　Defendant-Appellee Taxi Tours, Inc. is a direct, wholly owned subsidiary of Defendant-Appellee Open Top Sightseeing USA, Inc.

6.　　　Defendant-Appellee Open Top Sightseeing USA, Inc. is a direct, wholly owned subsidiary of Defendant-Appellee Big Bus Tours Limited.

7.     Defendant-Appellee Big Bus Tours Limited is a direct, wholly owned subsidiary of Defendant-Appellee Big Bus Tours Group Limited.

8.     Defendant-Appellee Big Bus Tours Group Limited is an indirect, wholly owned subsidiary of non-party Big Bus Tours Group Holdings Limited, which has no parent corporation.

9.     Each of the aforementioned Big Bus entities certifies that it is a non-governmental company and that no publicly held corporation owns 10% or more of its stock.

10.     Defendant-Appellee Go City Limited (f/k/a Leisure Pass Group Limited) is a direct, wholly owned subsidiary of non-party Newincco 1128 Limited. The latter entity is an indirect wholly owned subsidiary of Defendant-Appellee Go City Holdings Limited (f/k/a Leisure Pass Group Holdings Limited), which has no parent corporation.

11.     Defendant-Appellee Go City Inc. (f/k/a Leisure Pass Group, Inc.) is a direct, wholly owned subsidiary of non-party Go City Group North America Inc. The latter entity is an indirect wholly owned subsidiary of Defendant-Appellee Go City Holdings Limited (f/k/a Leisure Pass Group Holdings Limited).

12.     Each of the aforementioned Go City entities certify that it is a non-governmental company and that no publicly held corporation owns 10% or more of its stock.

Dated:    December 16, 2024    Respectfully submitted,

/s/ Kerry K. Jardine

Kerry K. Jardine
  *Counsel of Record*
GORDON REES SCULLY
MANSUKHANI
677 King Street, Suite 450
Charleston, South Carolina 29403
(843) 714-2520

*Counsel for Defendants-Appellees*
*Gray Line New York Tours, Inc., Twin*
*America, LLC, and Sightseeing Pass*
*LLC*

/s/ Peter M. Sartorius

Peter M. Sartorius
  *Counsel of Record*
OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

*Counsel for Defendants-Appellees Big*
*Bus Tours Group Limited, Big Bus*
*Tours Limited, Open Top Sightseeing*
*USA, Inc., Taxi Tours, Inc., Go City*
*Holdings Limited (f/k/a Leisure Pass*
*Group Holdings Limited), Go City*
*Limited (f/k/a Leisure Pass Group*
*Limited), and Go City Inc. (f/k/a*
*Leisure Pass Group, Inc.)*

12723125-3

Table of Contents

Page

INTRODUCTION ........................................................................................1

STATEMENT OF JURISDICTION.............................................................2

COUNTER-STATEMENT OF THE ISSUES ............................................2

STATEMENT OF THE CASE....................................................................3

    The Prior Federal Action .....................................................................3

    This Action ...........................................................................................6

    The State Court Action .........................................................................9

SUMMARY OF ARGUMENT ................................................................10

STANDARD OF REVIEW ......................................................................11

ARGUMENT ............................................................................................12

    I.    THE DISTRICT COURT CORRECTLY HELD THAT THE
        AMENDED COMPLAINT DOES NOT ALLEGE CONDUCT
        POST-DATING THE PRIOR JUDGMENT SUFFICIENT TO
        STATE A VIABLE CLAIM ...............................................................12

    II.   THE DISTRICT COURT CORRECTLY HELD THAT THE
        AMENDED COMPLAINT DOES NOT PLAUSIBLY
        ALLEGE VIABLE CLAIMS............................................................17

        A.    The Amended Complaint Does Not Plausibly Allege a
            Merger or Attempted Merger...................................................17

        B.    The Amended Complaint Does Not Plausibly Allege a
            Monopoly or Attempted Monopoly .........................................19

        C.    The Amended Complaint Does Not Plausibly Allege a
            Conspiracy in Restraint of Trade .............................................20

Conclusion ...............................................................................................23

Table of Authorities

Page

CASES

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
  823 F.3d 51 (2d Cir. 2016) ...............................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................13

*Day v. Moscow*,
  955 F.2d 807 (2d Cir. 1992) .............................................................11

*Dettelis v. Sharbaugh*,
  919 F.3d 161 (2d Cir. 2019) .............................................................10

*EDP Med. Computer Sys., Inc. v. United States*,
  480 F.3d 621 (2d Cir. 2007) .............................................................11

*First Serv. Fin. Inc. v. City Lights at Queen's Landing, Inc.*,
  No. 08-cv-3312, 2009 WL 750190 (S.D.N.Y. Mar. 20, 2009) .........13

*Go N.Y. Tour, Inc. v. Gray Line N.Y. Tours, Inc.*,
  141 S. Ct. 2571 (2021).........................................................................4

*Go N.Y. Tours Inc. v. Gray Line N.Y. Tours, Inc.*,
  831 F. App'x 584 (2d Cir. 2020) ........................................................4

*H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*,
  879 F.2d 1005 (2d Cir. 1989) ...........................................................19

*In re Crude Oil Commodity Futures Litig.*,
  913 F. Supp. 2d 41 (S.D.N.Y. 2012) ................................................18

*LaFaro v. N.Y. Cardiothoracic Grp., PLLC*,
  570 F.3d 471 (2d Cir. 2009) .............................................................10

*Madison Equities, LLC v. Serbian Orthodox Cathedral of St. Sava*,
  144 A.D.3d 431 (1st Dep't 2016) ........................................................9

ii

Table of Authorities
(continued)

Page

*Mayor & City Council of Balt.. v. Citigroup, Inc.*,
709 F.3d 129 (2d Cir. 2013) ................................................................15

*PaineWebber Inc. v. Bybyk*,
81 F.3d 1193 (2d Cir. 1996) ................................................................14

*Rounds v. Beacon Assoc. Mgt. Corp.*,
No. 09-cv-6910, 2009 WL 4857622 (S.D.N.Y. Dec. 14, 2009).........................13

*Starr v. Sony BMG Music Entm't*,
592 F.3d 314 (2d Cir. 2010) ................................................................15

*Storey v. Cello Holdings, LLC*,
347 F.3d 370 (2d Cir. 2003) ................................................................12

*TechnoMarine SA v. Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014) ................................................................11

*Waldman v. Village of Kiryas Joel*,
207 F.3d 105 (2d Cir. 2000) ................................................................6

STATUTES

15 U.S.C. § 1 .....................................................................................1

15 U.S.C. § 2 .....................................................................................1

15 U.S.C. § 15 ...................................................................................1

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 1331 ...............................................................................1

28 U.S.C. § 1367 ...............................................................................1

OTHER AUTHORITIES

Fed. R. Civ. Pro. 12(b)(6) ............................................................10, 11

## INTRODUCTION

This appeal represents the fifth attempt by Plaintiff-Appellant Go New York Tours Inc. ("Appellant") to litigate its flawed and implausible antitrust and unfair competition claims. Appellant has now raised these same claims in three trial courts and two appellate courts across three separate actions. Every court that has reviewed these claims to date has rejected them at the pleading stage.

In this round, before the District Court, Appellant attempted to bolster its previously dismissed claims by alleging—for the first time—the existence of an express written agreement between Defendants-Appellees supposedly entered into in summer 2020 to further their alleged anticompetitive scheme. Appellant framed this agreement as the lynchpin of its resuscitated claims. But that agreement, on its face, is not what Appellant alleges it to be: instead of memorializing Defendants-Appellees' conspiracy to exclude Appellant from the New York City multi-attraction pass market, the agreement is a simple ticket reseller agreement by which defendant-appellee Gray Line agreed to sell tickets on defendant-appellee Big Bus's hop-on, hop-off bus tours in New York City. This agreement offers nothing of substance to Appellant's antitrust claims and fails to advance Appellant's allegations of an anticompetitive conspiracy between Defendants-Appellees beyond the realm of pure speculation.

The District Court properly dismissed the Amended Complaint, holding that Appellant's antitrust and unfair competition claims are barred by *res judicata* because its allegations regarding the ticket reseller agreement are implausible based on the plain language of that document.[1] The District Court's dismissal should be affirmed.

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction over this matter under 28 U.S.C. § 1331, because it arose under the laws of the United States, and pursuant to 15 U.S.C. § 15, because it arose under the Sherman Act and Clayton Act. The District Court had supplemental jurisdiction over the remaining claims arising under state law under 28 U.S.C. § 1367, which it declined to exercise upon dismissal of Appellant's federal claims. The District Court entered final judgment, which dismissed the action and disposed of all of Appellant's claims, on August 27, 2024.

Plaintiff timely appealed on September 9, 2024. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## COUNTER-STATEMENT OF THE ISSUES

**Question:** Whether the District Court correctly held that Appellant's federal antitrust claims and common law unfair competition claim are barred by *res judicata*

---

[1] The District Court declined to exercise supplemental jurisdiction over Appellant's related New York State antitrust claims. (A. 345.)

because Appellant's identical claims were previously dismissed by the District Court with prejudice.

**Answer:** Yes. The District Court correctly determined that Appellant's federal antitrust claims and common law unfair competition claim are barred by *res judicata* and that the Amended Complaint does not allege conduct subsequent to the prior action sufficient to support a new cause of action.

**Question:** Whether Appellant's federal antitrust claims fail to allege facts sufficient to plausibly support the existence of an unlawful merger or monopoly, or a plausible inference of an anticompetitive conspiracy, in violation of the Sherman Act and Clayton Act.

**Answer:** Yes. Even if Appellant's claims were not barred by *res judicata*, they would be independently subject to dismissal for failure to state a claim upon which relief can be granted.

## STATEMENT OF THE CASE

### The Prior Federal Action

This action is not the first time that Appellant has raised antitrust claims against Defendants-Appellees related to their hop-on, hop-off tour bus and multi-attraction pass businesses.

In March 2019, Appellant commenced a civil action against Defendants-Appellees entitled *Go New York Tours, Inc. v. Gray Line New York Tours, Inc.*, No.

19-cv-02832 (LAK) (S.D.N.Y.) (the "Prior Federal Action"). On May 23, 2019, Appellant filed a first amended complaint in the Prior Federal Action (the "First Amended Complaint"). A. 55.[2]

Just as in this action, Appellant's First Amended Complaint in the Prior Federal Action alleged that Defendants-Appellees conspired to restrain trade in the hop-on, hop-off tour bus market and multi-attraction pass market in New York City by fixing prices and preventing Appellant from securing "trade partner agreements" with certain tourist attractions—including Top of the Rock, the Empire State Building, One World Observatory, and the Intrepid Sea, Air, and Space Museum. Just as in this action, in the Prior Federal Action, Appellant asserted claims for alleged antitrust violations under the Sherman Act and New York's Donnelly Act, and related claims under New York common law.

In a Memorandum and Order dated November 7, 2019, Judge Kaplan dismissed Appellant's First Amended Complaint in the Prior Federal Action for failure to state a claim, and granted leave to replead. Judge Kaplan concluded that Appellant's complaint failed to plead facts demonstrating the existence of any unlawful restraint of trade, and held that Appellant's claims rested on "conclusory allegation[s]," "faulty inference[s]," and "sparse details." A. 83.

---

[2] For the sake of consistency and the convenience of the Court, Defendants-Appellees adopt Appellant's convention for citations to the Appendix on appeal: "A. ___."

4

On December 5, 2019, Appellant filed a second amended complaint in the Prior Federal Action (the "Second Amended Complaint") with virtually no new factual allegations and, this time, asserting three causes of action: violations of the Sherman Act, the Donnelly Act, and unfair competition under New York law. A. 90.

In a Memorandum and Order dated March 4, 2020, Judge Kaplan dismissed the Second Amended Complaint. Judge Kaplan held that the Second Amended Complaint contained no new factual allegations in support of Appellant's Sherman-Act claims and again dismissed them—this time "with prejudice." With respect to Appellant's monopolization claim under Section 2 of the Sherman Act, Judge Kaplan held that Appellant abandoned that claim by declining to re-assert it in its Second Amended Complaint. A. 119 ("Plaintiff has abandoned the previously dismissed Sherman Act § 2 claim by not asserting it in the second amended complaint."). Finally, Judge Kaplan declined to exercise supplemental jurisdiction over Appellant's remaining New York state law claims. A. 118.

The final judgment in the Prior Federal Action was entered on March 6, 2020. A. 121.

On December 22, 2020, this Court affirmed Judge Kaplan's dismissal. *See Go N.Y. Tours, Inc. v. Gray Line N.Y. Tours, Inc.*, 831 F. App'x 584 (2d Cir. 2020). On April 26, 2021, the Supreme Court of the United States denied Appellant's petition

for a writ of certiorari. *See Go N.Y. Tours, Inc. v. Gray Line N.Y. Tours, Inc.*, 141 S. Ct. 2571 (2021).

<u>This Action</u>

In its brief, Appellant states that this action is predicated upon Appellant "learning that Respondents entered into post-pandemic agreements merging their operations in attempt to monopolize the market[.]" *See* Appellant's Brief ("App. Br.") at 7. In other words, this action is premised upon Appellant's "abandoned" monopolization allegations from the Prior Federal Action as newly supported by: the MOU, the supposed merger, other agreements, and business combination allegations.

Appellant argues that its Amended Complaint in this action alleges "fundamentally different claims and allegations," because while Appellant "abandoned" its Sherman Act Section 2 in the Prior Federal Action, here it alleges "actual and attempted monopolization … predicated on Go New York's discovery of agreements and observations (supported by photographic evidence) of conduct on the streets[.]" *Id.* at 8. Specifically, the Amended Complaint alleges that Defendants-Appellants formed "a joint venture pursuant to a formal written agreement, the effect of which was to monopolize and fix prices[,]" A. 26 ¶ 43, and that its photographic evidence, A. 298–99 (which merely shows a Big Bus logo on a Gray Line bus),

means Defendants-Appellants "hold[] themselves out as one entity, or at the very least, a joint venture" (*i.e.* not a merged entity). A. 297 ¶ 56.

While Appellant purports that Defendants-Appellants' motion was "based primarily on a declaration," App. Br. 9, the declaration was merely a vehicle for adducing the written agreement that is the "core" of Appellant's claims and is expressly incorporated by reference in its Amended Complaint. A. 46. While Appellant "rigorously disputes that the MOU was the entirety of the agreements among Respondents," App. Br. 9, Appellant's complaint alleges that these "several other agreements" were entered "in order to *implement* the MOU." A. 297 ¶ 56. Notwithstanding, the plain language of the MOU, on its face, refutes the allegation that a merger occurred. *See* A. 47-49.

In the District Court's fully reasoned decision of August 27, 2024 (the "Decision"), A. 327, the court first determined that the majority of Appellant's claims are barred by the *res judicata* effect of the final judgment in the Prior Federal Action. A. 338–42 (citing *Waldman v. Village of Kiryas Joel,* 207 F.3d 105, 107 (2d Cir. 2000) ("*Waldman II*")). The District Court held that "the mere inclusion of a few acts [following a prior disposition]" in a new complaint could not be used "to resurrect a claim." A. 340 (citing *Waldman II*). The District Court found "that the new conduct alleged in the Amended Complaint—specifically the MOU and unidentified and unspecified subsequent operating agreements—do not support a

new cause of action," because "[l]ike in *Waldman II*, it is simply not 'plausible' to characterize Appellant's antitrust claims as based 'in a significant way' on facts that occurred after the Prior Federal Action." A. 342. Accordingly, the District Court correctly held that those claims are barred by *res judicata*.

The District Court Decision clearly explains why the MOU, purported other agreements, and speculated "subsequent related operating agreements" do not support Appellant's "merger" and "conspiracy" claims:

> [T]he text of the MOU fails to support these allegations, as it only describes an agreement for Gray Line to resell tickets for Big Bus tour bus services and to license intellectual properly [*sic*] "solely" to the extent necessary for such resale. The MOU does not purport to combine or merge Defendants' businesses into a "single entity," nor does it reflect an agreement between Defendants "to fix prices" and prevent competition in the tour bus and multi-attraction pass industries in New York City. Go New York's claim that the MOU "formalize[s] and extend[s] a pre-existing conspiracy among Big Bus, Gray Line and Go City to deny Go New York access to critical trade partners within New York City," is also implausible. The MOU, by its own terms, expressly excludes third-party attractions from its scope.

A. 340–41 (internal citations omitted). With respect to "other subsequent agreements" the District Court found the allegations "wholly conclusory" without any specificity as to purported terms, parties, when entered, or their subject matter. A. 341. As to the remaining factual allegations, the District Court found that the crux

8

of Appellant's allegations could not be relitigated as they were dismissed with prejudice in the Prior Federal Action. A. 343.

Accordingly, based upon the plain language of the MOU and lack of sufficient nonspeculative factual allegations concerning other alleged anticompetitive conduct by Defendants-Appellees, the lower court properly found that Appellant's "merger" and "monopoly" allegations were implausible. As Appellant's federal claims rely upon showing a conspiracy or single wholly dominant entity, which Appellant failed to adequately allege, the District Court properly dismissed them. A. 345.[3]

The State Court Action

On May 28, 2021—approximately five months after this Court affirmed Judge Kaplan's dismissal with prejudice—Go New York filed antitrust counterclaims against Defendants-Appellees in a pending civil action in New York Supreme Court (the "New York State Court Action"). *See Go N.Y. Tours Inc. v. Gray Line N.Y. Tours, Inc.*, No. 1:23-cv-04256 (ER), ECF No. 69-6 (S.D.N.Y.).

Recently, the New York court denied Appellant's motion to amend its counterclaims in that action to add additional claims premised on violations New

---

[3] Defendants-Appellants Big Bus Tours Group Limited, Big Bus Tours Limited, Go City Holdings Limited (f/k/a Leisure Pass Group Holdings Limited), and Go City Limited (f/k/a Leisure Pass Group Limited) also moved before the District Court to dismiss the Amended Complaint as to them because it does not plead a basis upon which to exercise personal jurisdiction over them. The District Court denied that motion as moot because it had separately granted Defendants-Appellants' motion to dismiss for failure to state a claim.

9

York's Donnelley Act based on the same alleged anticompetitive conduct alleged in this action. In her decision denying Appellant's motion to amend, Justice Schecter of the Supreme Court of the State of New York, Commercial Division, held that Appellant's proposed counterclaims based on the MOU are "permeated with and mostly predicated on false and legally untenable assertions regarding the MOU" and, simply put, "the MOU 'simply does not say what [Appellant] claims it says.'" *See Taxi Tours Inc. v. Go N.Y. Tours, Inc.*, No. 653012/2019, NYSCEF Dock. No. 507 (N.Y. Sup. Ct. Sept. 27, 2024) (quoting *Madison Equities, LLC v. Serbian Orthodox Cathedral of St. Sava*, 144 A.D.3d 431 (1st Dep't 2016)).

## SUMMARY OF ARGUMENT

The Court should affirm the judgment below because Appellant has failed to allege facts supporting the existence of an unlawful merger, monopoly, or anticompetitive conspiracy between or among Defendants-Appellees.

Appellant's attempt to resurrect its previously dismissed antitrust and unfair competition claims—and avoid the effect of *res judicata* which would otherwise bar its claims—is premised on the summer 2020 MOU entered into between certain of Defendants-Appellees after final judgment was entered in the Prior Federal Action which resulted in the dismissal of Appellant's claims with prejudice. According to Appellant, the MOU memorializes a "pre-existing conspiracy" between and among Defendants-Appellees "to deny Go New York access to critical trade partners within

New York City"—the same allegation dismissed in the Prior Federal Action—and fix prices for their respective multi-attraction pass products—a completely conclusory allegation without any factual support. A. 300. As described above, the District Court correctly found that the MOU—which is incorporated by reference in the Amended Complaint and may be properly considered on a motion to dismiss— contains no terms that remotely reflect Appellant's allegations. Appellant's accusations are instead fabricated out of whole cloth, a transparent attempt to overcome the pleading defects recognized by the District Court in dismissing Appellant's Prior Federal Action.

This Court should affirm the ruling of the District Court.

## STANDARD OF REVIEW

This Court "review[s] de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163 (2d Cir. 2019) (quotations omitted).

"To survive a 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, plausibly to give rise to an entitlement to relief." *Id.* The Court is "not bound to accept as true legal conclusions couched as factual allegations . . . . Only a complaint that states a plausible claim for relief survives a motion to dismiss." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475–76 (2d Cir.

11

2009) (internal citations omitted); *see also Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 61 (2d Cir. 2016) (finding that appellant's assertions that appellee falsely mischaracterized trial testimony and misrepresented studies were legal conclusions that need not be credited, not factual allegations).

"A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) (*citing Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)).

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY HELD THAT THE AMENDED COMPLAINT DOES NOT ALLEGE CONDUCT POST-DATING THE PRIOR JUDGMENT SUFFICIENT TO STATE A VIABLE CLAIM

Appellant does not dispute that the District Court applied the correct legal standard for determining when a claim is barred by *res judicata* as a result of a final judgment in a Prior Federal Action. There is no dispute that Appellant's federal antitrust and common law unfair competition claims in the Prior Federal Action involve the same parties as this action, that those claims were adjudicated on the merits, and that Appellant's claims in this action are premised in every material part on the same conduct alleged in the Prior Federal Action. *See EDP Med. Computer Sys., Inc. v. U.S.*, 480 F.3d 621 (2d Cir. 2007).

12728623-6

Instead, Appellant argues that the District Court improperly "resolved competing inferences" in Defendant-Appellees' favor when concluding that the MOU—which Appellant alleges was entered into in furtherance of the anticompetitive scheme described in the Prior Federal Action—and other "additional facts" do not support a new cause of action. Appellant is wrong. Accordingly, the District Court found that the claims are barred by *res judicata*. *See Storey v. Cello Holdings, LLC*, 347 F.3d 370, 384 (2d Cir. 2003) (*res judicata* applies "where some of the facts on which a subsequent action is based post-date the first action *but do not amount to a new claim*" (emphasis supplied)).

The District Court Decision is based in part on its conclusion that the MOU does not support Appellant's assertion that Defendants-Appellees agreed to enter into an unlawful merger or engage in other anticompetitive misconduct. Rather than resolving competing inferences advanced by the parties, as Appellant claims, the District Court based this conclusion on the MOU itself:

> The MOU does not purport to combine or merge Defendants' businesses into a "single entity," nor does it reflect an agreement between Defendants "to fix prices" and prevent competition in the tour bus and multi-attraction pass industries in New York City. Go New York's claim that the MOU "formalize[s] and extend[s] a pre-existing conspiracy among Big Bus, Gray Line and Go City to deny Go New York access to critical trade partners within New York City," is also implausible. The MOU, by its own terms, expressly excludes third-party attractions from its scope.

13

A. 340–41 (internal citations omitted).

Instead of resulting in a "merger" of Defendants-Appellees, the District Court correctly concluded that the text of MOU "only describes an agreement for Gray Line to resell tickets for Big Bus tour bus services and to license intellectual property 'solely' to the extent necessary for such resale." A. 340. The District Court further held that Appellant's allegation that the MOU memorialized a "merger" or other agreement "to deny [Appellant] access to critical trade partners" was "implausible." A. 341. The District Court based its interpretation on the plain language of the MOU, and no "resolution" of competing inferences was needed.

In effect, Appellant argues that the District Court erred by not crediting Appellant's allegations that the MOU says or means something other than what is reflected by the clear language of the document. According to Appellant, the District Court thereby applied an improper "probability" standard on the underlying motion. App. Br. 15–16. But as the District Court explained, even on a motion to dismiss, the court is "not required to credit 'mere conclusory statements' or '[t]hreadbare recitals of the elements of a cause of action,'" but must engage in a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." A. 336–37 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). While a reviewing court must resolve ambiguities of any incorporated document in the non-movants favor, "[w]here there is no ambiguity to a contract and the intent of the

14

12728623-6

parties can be determined from the face of the agreement, interpretation is a matter of law, and a claim turning on that interpretation may be resolved on a motion to dismiss." *Rounds v. Beacon Assoc. Mgt. Corp.*, No. 09-cv-6910, 2009 WL 4857622, at *3 (S.D.N.Y. Dec. 14, 2009) (quoting *First Serv. Fin. Inc. v. City Lights at Queen's Landing, Inc.*, No. 08-cv-3312, 2009 WL 750190, at *2 (S.D.N.Y. Mar. 20, 2009)); *see PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996).

Implicitly acknowledging that the MOU fails to support its antitrust claims, Appellant also criticizes the District Court for improperly "relying" on the declaration of a Big Bus executive, Julia Conway, when concluding that "the MOU is the only agreement" entered into between Defendants-Appellees in furtherance of their alleged anticompetitive conspiracy. App. Br. 16. But this is a straw-man argument.

First, the Conway Declaration does not assert that the MOU is the "only agreement" between Defendants-Appellees. *See* A. 46. Nor does the Decision state anywhere that the District Court relied on an inference or finding that the MOU was the "only agreement" between the parties.

Second, Appellant erroneously argues that the District Court ignored the Amended Complaint's allegations that "other agreements" existed in addition the MOU, which supposedly resulted in or facilitated Defendants-Appellants' alleged unlawful merger and anticompetitive conspiracy.

15

As a threshold matter, Appellant ignores that the Amended Complaint alleges only that the MOU is the agreement between Defendants-Appellees that purportedly "merged [their] operations" to "form a single operating entity." A. 296–97 ¶ 55–56. However, on appeal, Appellant now attempts to backtrack and asserts that there are "agreements other than the MOU pursuant to which Respondents merged their operations," which "the District Court ignored or discounted." App. Br. 26–27.

In any event, rather than ignoring the Amended Complaint's allegations concerning those alleged "other agreements," the District Court addressed them head-on, holding that the Amended Complaint's reference to unidentified "subsequent related operating agreements" —allegedly pertaining to cross-licensing of trademarks, use of certain bus stops, and payments to sales representatives—is "wholly conclusory" and "also not sufficient evidence of a merger." A. 341. *See Mayor & City Council of Balt.. v. Citigroup, Inc.*, 709 F.3d 129, 135–36 (2d Cir. 2013) ("The ultimate existence of an 'agreement' under antitrust law [] is a legal conclusion, not a factual allegation.") (citing *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 319 n.2 (2d Cir. 2010) ("The allegation that defendants agreed to [a] price floor is obviously conclusory and is not accepted as true.")).

In sum, the District Court correctly held that the Amended Complaint's allegations concerning the MOU and "other alleged agreements" do not create a "plausible competing inference" that a merger or other anticompetitive conspiracy

took place. The District Court also properly concluded that those allegations are insufficient to support a "new" cause of action for violation of the Sherman Act or for unfair competition. Accordingly, the District Court appropriately determined that these claims are barred by *res judicata*.

## II. THE DISTRICT COURT CORRECTLY HELD THAT THE AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE VIABLE CLAIMS

### A. The Amended Complaint Does Not Plausibly Allege a Merger or Attempted Merger

Appellant argues that, "[i]n addition to purportedly misconstruing the MOU, the District Court also "ignored" other allegations in the Amended Complaint that indicate the existence of an unlawful merger between Defendants-Appellees. App. Br. 13–14. Appellant is wrong.

In fact, the District Court specifically addressed these "ignored" allegations regarding other operating agreements, holding: "To the extent Go New York means the other agreements it describes in the First Amended Complaint, namely Gray Line and Big Bus' cross-licensing of trademarks, use of certain bus stops, and payments to sales representatives, these allegations are also not sufficient evidence of a merger." A. 341 at n.12. As to those alleged agreements, the District Court held these allegations were wholly conclusory without specificity, and insufficient to adequately allege an agreement. A. 341.

17

Appellant further contends that "the District Court also ignored … a major impact of this merger … to deny [Appellant] access to critical trade partners[.]" App. Br. 24. Appellant is wrong again. The District Court addressed this exact point, finding that "the MOU, by its own terms, expressly excludes third-party attractions from its scope." A. 341. The District Court also correctly concluded that the remaining factual allegations regarding the third parties were merely "references [to] the same nine tourist attractions as in the Prior Federal Actions, and in fact [] nearly verbatim allegations." A. 342.

In fact, the Amended Complaint itself contradicts Appellant's allegation that Defendants-Appellees effectively merged "to form a single operating entity." A. 296 ¶ 55. Rather than alleging combined business operations, the Amended Complaint alleges that Big Bus and Gray line continued after the MOU to operate as separate, arms-length business entities. According to the Amended Complaint, under the MOU "Gray Line would continue to sell tickets [for rides on] buses operated by Big Bus." A. 297 ¶ 55. The Amended Complaint also alleges that the parties entered into various additional agreements to "implement" the MOU, such as cross-licensing of trademarks, communal use of bus stops for Big Bus' hop-on, hop-off tour bus business, and allocation of profits. A. 297 ¶ 56. But if Defendants-Appellees merged to form a "single operating entity," Appellant fails to explain why the parties would require cross-licensing of intellectual property between entities, licenses to utilize

18

each others' bus stops, or agreements to share profits. As the District Court concluded, rather than evidencing a merger, these alleged agreements merely reflect two separate entities conducting arms-length business. A. 344.

### B. The Amended Complaint Does Not Plausibly Allege a Monopoly or Attempted Monopoly

As the District Court noted, "monopoly power is, by definition, power held unilaterally." A. 331 n.4 (citing A. 86, Mem. & Order (Nov. 11, 2019) ("[A]s the prefix 'mono' suggests there can only be one monopolist.")); *see also H.L. Hayden Co. u Siemens Med. Systems, Inc.,* 879 F.2d 1005, 1018 (2d Cir. 1989) ("[I]n order to sustain a charge of monopolization or attempted monopolization, a plaintiff must allege the necessary market domination of a particular defendant." (citations omitted)); *In re Crude Oil Commodity Futures Litig.,* 913 F. Supp. 2d 41, 57 (S.D.N.Y. 2012) ("A claim for conspiracy to monopolize under section 2 requires a showing of ... proof of a concerted action deliberately entered into with the specific intent to achieve an unlawful monopoly . . . ."). Appellant's argument that the Amended Complaint adequately alleges monopolization, which relies on the implausible inference of a merger between Defendants-Appellees, is thus irretrievably flawed.

Nor does the Amended Complaint allege an "overt act" in furtherance of Defendants-Appellees' alleged conspiracy to monopolize. Appellant argues that "there can hardly be a stronger 'overt act' than an actual MOU itself." App. Br. 32.

19

But, as explained above, the text of the MOU does not support Appellant's allegation that Defendants-Appellees agreed to or did create or maintain a monopoly. A. 340–41.

### C.    The Amended Complaint Does Not Plausibly Allege a Conspiracy in Restraint of Trade

Finally, Appellant argues that "at the very least Appellant has alleged a concerted restrain on trade in violation of § 1 of the Sherman Act and the Donnelly Act." Whether or not adequately alleged in this action, the claim fails as these exact allegations were already dismissed with prejudice in the Prior Federal Action and therefore, the District Court appropriately determined that they were barred by *res judicata*. A. 342.

Even if they were not barred by the final judgment in the Prior Federal Action, Appellant's claim was properly dismissed.

As Judge Kaplan previously determined in the Prior Federal Action, Appellant's conspiracy claims failed for lack of alleged direct evidence from which the Court may infer a conspiracy or indirect evidence and the requisite "plus factors." A. 85–86. In that decision, Judge Kaplan held that even "on a generous reading of the FAC, the existence of any plus factor or similar indicia of a conspiracy is implausible. Plaintiff must make more than inferential allegations that the success of defendants' business relative to plaintiff's implies the existence of an unlawful conspiracy," A. 86. Appellant's amendment in the Prior Federal Action, its

20

Amended Complaint in this action incorporating the MOU and additional allegations, and its briefing on this appeal do not cure this dispositive defect. Here, Appellant's inclusions of allegations concerning the MOU—an agreement that simply does not support Appellant's claims—merely confirms that the Amended Complaint utterly fails to allege a viable claim in this respect.

Nor does the Amended Complaint allege adequate "plus factors" sufficient to give rise to an inference of a conspiracy. Appellant purports to plead several such "plus factors," but they all boil down to the Amended Complaint's new allegations concerning its completely implausible interpretation of the MOU and the speculative existence of various "other" unidentified and unspecified agreements alleged to have been entered into to facilitate the MOU's fictitious "merger." Notwithstanding the Amended Complaint's allegations, the MOU does not contain any agreement for Gray Line to exit the New York City tour bus market; for Gray Line and Big Bus to exclude Go New York from trade partner attractions; for Gray Line and Big Bus to fix prices for tour bus tickets; or for Gray Line and Big Bus to fix prices for their respective multi-attraction passes (to the contrary, it provides that "[Big Bus] shall continue to sell its products . . . at prices *solely determined by* [*Big Bus*]*, as will* [*Twin America*]" (emphasis added)) . A. 48. The MOU simply does not address those matters at all. And the terms that do appear in the MOU are not relevant to the allegations of conspiracy in Go New York's Amended Complaint. Significantly, the

21

Amended Complaint does not allege—nor could it allege—that the ticket reseller arrangement created by the MOU violates Federal or state antitrust laws.

12728623-6

## CONCLUSION

The District Court did not err with respect to any of the purported grounds for appeal raised by Appellant. Accordingly, the District Court's Judgment should be affirmed.

Dated:      December 16, 2024      Respectfully submitted,

*/s/ Kerry K. Jardine*

Kerry K. Jardine
   *Counsel of Record*
Richard Sybert
Daniel B. Fix
GORDON REES SCULLY
MANSUKHANI
677 King Street, Suite 450
Charleston, South Carolina 29403
(843) 714-2520

*Counsel for Defendants-Appellees Gray Line New York Tours, Inc., Twin America, LLC, and Sightseeing Pass LLC*

*/s/ Peter M. Sartorius*

Peter M. Sartorius
   *Counsel of Record*
Stephen P. Ross
OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

*Counsel for Defendants-Appellees Big Bus Tours Group Limited, Big Bus Tours Limited, Open Top Sightseeing USA, Inc., Taxi Tours, Inc., Go City Holdings Limited (f/k/a Leisure Pass Group Holdings Limited), Go City Limited (f/k/a Leisure Pass Group Limited), and Go City Inc. (f/k/a Leisure Pass Group, Inc.)*

23

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 4,723 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word with 14-point Times New Roman Font.

Dated: December 16, 2024

*/s/ Peter M. Sartorius*
PETER M. SARTORIUS

12728623-6